## MEMORANDUM DECISION



Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT

Patrick A. Duff
Duff Law, LLC
Evansville, Indiana

ATTORNEY FOR APPELLEES

Katharine Vanost Jones
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Adoption of E.D.,

K.R.,

*Appellants-Respondents,*

v.

A.D.S. and A.S.,

*Appellees-Petitioners*

August 12, 2015

Court of Appeals Case No. 82A01-1412-AD-520

Appeal from the Vanderburgh Superior Court

The Honorable Brett Niemeier, Judge

Case No. 82D07-1309-AD-120

**Vaidik, Chief Judge.**

# Case Summary

[1]  K.R. ("biological mother") appeals the trial court's denial of her Trial Rule 60(B) motion for relief from judgment. She argues that she was not served with notice of the adoption proceedings regarding her son, E.D. Because the evidence shows that biological mother was personally served with notice of the proceedings, we affirm.

# Facts and Procedural History

[2]  Biological mother gave birth to E.D. in October 2012. E.D. was born with drugs in his system and was hospitalized for ten days. As a result, the Indiana Department of Child Services (DCS) filed a petition alleging that E.D. was a child in need of services (CHINS), and E.D. was removed from biological mother's care. In December, two-month-old E.D. was placed with A.D.S. and A.S. ("adoptive parents"), his paternal aunt and uncle. E.D. has been in their care since that time.

[3]  Biological mother was ordered to participate in substance-abuse services, attend Drug Court, refrain from using drugs, and submit to random drug screens. She was unsuccessful: she failed to appear for eighteen drug screens in a four-month period, tested positive for a combination of Oxycodone, Oxymorphone, and methamphetamine nine times, and was discharged from Drug Court due to noncompliance. In May 2013 biological mother sought inpatient drug treatment, but she left the treatment facility before completing treatment.

Biological mother also failed to attend a number of CHINS proceedings, and DCS filed a petition to terminate her parental rights.

[4] In September 2013—biological mother's parental rights had not yet been terminated—adoptive parents filed a petition to adopt E.D. and alleged that biological mother's consent was not necessary. E.D.'s biological father, C.D. ("biological father"), consented to the adoption. The trial court held a hearing on the adoption petition in December 2013. At the hearing, biological father testified that he served biological mother with a "packet" of "three papers" regarding the adoption proceedings:

> I gave her the whole packet and then there was another paper that they g[a]ve me that I was supposed to sign and say where she was at. Like where I served her and the date. And then there was another paper that said the exact same thing, but then at the bottom of it[,] it had a place for her signature for her to sign and say that she knew about it.

Tr. p. 10. Biological father said that biological mother refused to sign the papers and they fought about E.D. being adopted. *Id.* at 11. He also indicated that biological mother planned to attend the adoption-petition hearing, but she was not present. *Id.* The trial court continued the hearing to January 2014. Biological mother did not appear at the January 2014 hearing either, and her attorney indicated that he had not heard from her in some time.[1] Over the

---

[1] This attorney represented biological mother in the CHINS case and appeared on her behalf in the adoption proceedings, though he was not in contact with biological mother at that time. A new attorney represented biological mother in her request for Trial Rule 60(B) relief from judgment.

attorney's objection, biological mother was defaulted.  The trial court concluded that biological mother's consent to the adoption was not necessary and granted the adoption petition.  *Id.* at 17, 20.

[5]     Biological mother later filed a motion from relief from judgment.  In relevant part, biological mother argued that she was not served with notice of the adoption proceedings.  At a hearing on her motion, biological mother testified that she received only one paper from biological father and she tore it up, thinking it was related to health care.  *Id.* at 40.  She also denied speaking to biological father about E.D. being adopted.  *Id.*  Biological father testified again, and stated that the three papers he gave to biological mother were copies of the same document—a summons.  *Id.* at 26.  Contrary to biological mother's testimony, he again recalled fighting with biological mother about E.D. being adopted.  *Id.* at 31.  Adoptive mother, meanwhile, testified that she watched her attorney prepare "the packet" that biological father had delivered, and that it contained a summons, notice to appear, and the adoption petition.  *Id.* at 62, 64.

[6]     The trial court ultimately rejected biological mother's lack-of-notice claim, explaining that she had repeatedly failed to appear when previously summoned to court and biological father had personally served her with notice of the adoption proceedings:

> In the [CHINS proceedings], [biological mother] failed to appear [three times].  During the [CHINS proceedings], the Court issued writs on her first two failure[-]to[-]appears.  The Court also found her in contempt and sentenced her to jail for not complying with the Court's

orders. [Biological mother] failed to appear in this cause as she was afraid she would be arrested as she had been previously. [Biological mother's attorney] attempted to get her to appear, but she refused. Even though [biological mother] did not read the documents given to her by [biological father], she was properly served and had notice of the hearing.

[Biological mother] was served with a notice, the [adoption] petition, and summons to appear. While months after the fact [biological father] misidentified the documents that he personal[ly] served on [biological mother], the evidence presented by [biological father] substantiates that "the packet" he gave her contained these documents. [Adoptive parents' attorney] is an experienced, highly reputable attorney who would not give the wrong paperwork to be served. [Biological father] originally testified only five days after giving [biological mother] the documents that he gave her "the packet." A duplicate packet [that adoptive parents' attorney] filed with the court contained the [adoption] petition, notice, and summons.

\*     \*     \*     \*     \*

The notice to appear stated that [biological mother] should appear on December 10th, but [she] failed to appear. The Court reset the default hearing to January 8, 2014 . . . .[Biological mother] again failed to appear.

Appellant's App. p. 71. The court denied the motion for relief from judgment. Biological mother now appeals.

# Discussion and Decision

Biological mother appeals the trial court's denial of her Trial Rule 60(B) motion for relief from judgment. "The decision of whether to grant or deny a Trial Rule 60(B) motion for relief from judgment is within the sound, equitable discretion of the trial court." *Stonger v. Sorrell*, 776 N.E.2d 353, 358 (Ind. 2002) (citation omitted). We will only reverse where the trial court has

abused its discretion. *Id.* (citation omitted). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court or the reasonable inferences therefrom. *Shane v. Home Depot USA, Inc.*, 869 N.E.2d 1232, 1232 (Ind. Ct. App. 2007).

[8] The sole question before us is whether biological mother was served with notice of the adoption proceedings.[2] "[A] judgment entered where there has been no service of process is void for want of personal jurisdiction." *In re Adoption of L.D.*, 938 N.E.2d 666, 669 (Ind. 2010) (citation omitted). If, as she claims, biological mother did not receive notice, her Trial Rule 60(B) motion should have been granted because the adoption was void. *Id.*

[9] Indiana Trial Rule 4.1 provides the following for service of process:

> **(A) In General.** Service may be made upon an individual, or an individual acting in a representative capacity, by:
>
> (1) sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment of receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter; or
>
> *(2) delivering a copy of the summons and complaint to him personally*; or
>
> (3) leaving a copy of the summons and complaint at his dwelling house or usual place of abode; or
>
> (4) serving his agent as provided by rule, statute or valid agreement.

---

[2] The adoptive parents argue that biological mother must show a meritorious defense in order to prevail on appeal, but we confine our analysis, as the trial court did, to the issue of notice. Likewise, we do not address biological mother's arguments regarding the propriety of serving adoption documents on one of her attorneys; we need only consider the issue of biological father's personal service on biological mother.

(Emphasis added).

[10] The evidence shows that biological father personally served biological mother with notice of the adoption proceedings.[3] The record shows, as the trial court found, that biological mother routinely failed to appear for hearings regarding E.D., despite having adequate notice. And at a hearing on the adoption petition, biological father testified that he personally served mother with "the packet" of "three papers," which was later shown to be a notice, the adoption petition, and a summons to appear. Although biological father later misidentified these documents, the trial court examined a copy of "the packet" and determined that it contained the required documents:

> While months after the fact [biological father] misidentified the documents that he personal[ly] served on [biological mother], the evidence presented by [biological father] substantiates that "the packet" he gave her contained these documents. [Adoptive parents' attorney] is an experienced, highly reputable attorney who would not give the wrong paperwork to be served. [Biological father] originally testified only five days after giving [biological mother] the documents that he gave her "the packet." A duplicate packet [that adoptive parents' attorney] filed with the court contained the [adoption] petition, notice, and summons.

Appellant's App. p. 71.

---

[3] While the evidence is clear in this case that biological mother received notice of the adoption proceedings, having a party with adverse interests serve another party may be problematic in other cases.

[11] Biological mother argues that biological father's testimony supports her claim that she was not served with the required documents. *See* Appellant's Br. p. 13-14. Somewhat confusingly, she also asserts that she and biological father were under the influence of drugs when he served her with the adoption paperwork. *Id.* at 14-15. To this end, biological mother invites us to assess the credibility of witnesses and reweigh the evidence before the trial court, which we will not do. We affirm the trial court's conclusion that biological mother was personally served with notice of the adoption proceedings; and, as a result, we affirm the court's denial of her Trial Rule 60(B) motion for relief from judgment.

[12] Affirmed.

Robb, J., and Pyle, J., concur.